UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKIYA BROWN,<br><br>Plaintiff,<br><br>-vs-<br><br>BRIGHT MINDS CONSULTING INC.; and JONATHAN KING,<br><br>Defendants | Civil Action No.<br><br>**COMPLAINT**<br><br>**PLAINTIFF REQUESTS A TRIAL BY JURY** |

Plaintiff, SHAKIYA BROWN ("Plaintiff" and/or "BROWN"), by and through undersigned counsel, hereby files this Civil Action Complaint against Defendants, BRIGHT MINDS CONSULTING INC. ("Defendant" and/or "BRIGHT MINDS") and JONATHAN KING ("Defendant" and/or "KING"), individually, and upon information and belief avers the following:

## NATURE OF THE CASE

Plaintiff brings this action against Defendants for sex/gender discrimination, sexual harassment, retaliation, and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"), as codified, §9-1103. Plaintiff was subjected to discriminatory treatment and sexual harassment based on her sex/gender, including inappropriate and sexually charged conduct by Defendant KING. Plaintiff further experienced retaliation after reporting and opposing the sexually harassing and discriminatory conduct to Human Resources. Shortly after engaging in this protected activity, Plaintiff's employment was terminated. As a direct and proximate result of Defendants' unlawful

actions, Plaintiff suffered lost wages, emotional distress, humiliation, loss of enjoyment of life, damage to her professional reputation, and other damages, for which she seeks relief under Title VII and the PHRA.

**JURISDICTION AND VENUE**

1. This action arises under federal and state law, including Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA"), as Plaintiff alleges sex/gender discrimination, sexual harassment, hostile work environment, and retaliation.

2. This Court has subject matter jurisdiction over Plaintiff's claims arising under federal law under 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over the claims arising under Commonwealth and City law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District of Pennsylvania, as the discriminatory and retaliatory conduct giving rise to Plaintiff's claims occurred within the Eastern District of Pennsylvania.

5. Around June 2, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC") and Philadelphia Commission on Human Relations ("PCHR"), alleging sex/gender discrimination, sexual harassment, hostile work environment, and retaliation.

6. On July 20, 2026, the EEOC issued a Determination and Notice of Rights, permitting Plaintiff to file this action and completing her exhaustion of administrative remedies under Title VII.

7. As more than one year has elapsed since Plaintiff dual-filed her Charge of Discrimination with the PHRC and PCHR, Plaintiff's claims under Pennsylvania and Philadelphia law are also now ripe for inclusion in this Complaint.

**PARTIES**

8. Plaintiff SHAKIYA BROWN ("PLAINTIFF" or "BROWN"), is an individual adult female who resides in the Commonwealth of Pennsylvania.

9. Defendant BRIGHT MINDS CONSULTING INC. (hereinafter referred to as "Defendant" and/or "BRIGHT MINDS") is a domestic business corporation created under and authorized to do business pursuant to the laws of the Commonwealth of Pennsylvania.

10. Defendant BRIGHT MINDS maintains its headquarters at 1500 John F. Kennedy Boulevard, Suite 411, Philadelphia, Pennsylvania 19102.

11. At all times material, Defendant BRIGHT MINDS operated and continues to operate a behavioral health services organization providing Applied Behavior Analysis ("ABA") and related behavioral health services to children, youth, and young adults.

12. At all times material, Defendant BRIGHT MINDS employed Plaintiff as a Registered Behavioral Technician and assigned Plaintiff to provide behavioral health services to children in school settings.

13. At all times material, Defendant JONATHAN KING ("KING") was the Chief Executive Officer of Defendant BRIGHT MINDS.

14. At all times material, Defendant KING possessed and exercised managerial and supervisory authority on behalf of Defendant BRIGHT MINDS and acted directly or indirectly in the interest of Defendant BRIGHT MINDS with respect to Plaintiff's employment.

15. At all times material, Defendant KING acted as an agent, officer, and management-level employee of Defendant BRIGHT MINDS.

## MATERIAL FACTS

16. Around May 1, 2024, Plaintiff began working for Defendant BRIGHT MINDS as a Registered Behavioral Technician ("RBT"), providing behavioral health services to children with varied mental, emotional, and behavioral health needs in school settings.

17. In that role, Plaintiff was responsible for working directly with assigned students and providing behavioral support and related services on behalf of Defendant BRIGHT MINDS.

18. At all times material, Defendant JONATHAN KING ("KING") served as the Chief Executive Officer of Defendant BRIGHT MINDS and occupied one of the highest positions of authority within the organization.

19. During Plaintiff's employment, she became aware of a workplace culture in which female employees were subjected to inappropriate, sexually charged, and gender-based conduct, particularly involving Defendant KING.

20. Plaintiff became aware that Defendant KING fostered a culture in which female employees were implicitly and explicitly encouraged to engage in sexual relationships with him in exchange for professional advancement and/or continued employment.

21. Upon information and belief, female employees who refused or resisted such conduct were marginalized, denied professional opportunities, and treated less favorably than employees who acquiesced to KING's behavior.

22. Defendant KING ultimately directed inappropriate and sexually charged conduct toward Plaintiff personally.

23. On or around February 4, 2025, while Plaintiff was performing her job duties at a school, Defendant KING approached Plaintiff in the school gymnasium.

24. During this interaction, Defendant KING directed his attention toward Plaintiff's breasts and, while looking at her chest, made the lewd, sexually inappropriate, and humiliating comment, **"I can see your breasts through your shirt."**

25. KING's comment was unsolicited, highly personal, sexually charged, and completely inappropriate in the workplace.

26. The comment was particularly humiliating because it was made by the Chief Executive Officer of Plaintiff's employer while Plaintiff was performing her professional duties in a school environment where students and other individuals were present.

27. Rather than addressing Plaintiff in a professional and appropriate manner, KING specifically referenced Plaintiff's breasts, thereby sexualizing Plaintiff's body and directing unwanted attention toward an intimate area of her body.

28. The nature and manner of KING's remark caused Plaintiff to feel objectified, degraded, embarrassed, and extremely uncomfortable.

29. Plaintiff was particularly disturbed that such a lewd and sexually inappropriate remark came directly from Defendant BRIGHT MINDS' Chief Executive Officer, an individual who possessed significant authority and influence within the organization.

30. The unequal power dynamic between Plaintiff and KING further intensified Plaintiff's discomfort, as KING was not merely a coworker but the Chief Executive Officer of the company for which Plaintiff worked.

31. Plaintiff reasonably perceived KING's conduct as sexual harassment and was left feeling humiliated, unsafe, and deeply uncomfortable continuing to work in an environment where the

company's highest-ranking executive felt entitled to make comments concerning her breasts and body.

32. Plaintiff did not welcome, invite, encourage, or consent to KING's sexually inappropriate conduct.

33. Plaintiff was visibly upset and deeply humiliated by the incident.

34. Plaintiff promptly reported KING's sexually inappropriate and harassing conduct to Human Resources on or around February 4, 2025.

35. In reporting KING's conduct, Plaintiff expressly communicated that the incident made her uncomfortable and that she did not feel safe continuing to work in an environment where a senior member of leadership engaged in such conduct.

36. Plaintiff's complaint placed Defendant BRIGHT MINDS on actual notice that its Chief Executive Officer had engaged in conduct that Plaintiff considered sexually harassing, humiliating, and inappropriate.

37. Indeed, following Plaintiff's complaint, Human Resources addressed the incident directly with KING and instructed him to refrain from directly addressing uniform-related matters with female employees.

38. Human Resources further instructed KING to be more mindful of his language so that his comments would not be considered offensive or inappropriate and directed him to cease direct or indirect communication with Plaintiff without Human Resources present.

39. These restrictions demonstrate that Defendant BRIGHT MINDS understood the seriousness of Plaintiff's complaint and recognized the need to restrict KING's future interactions with Plaintiff.

40. The incident and Plaintiff's resulting discomfort were so severe that Plaintiff initially gave notice of her intention to resign from her employment because she did not want to continue working in a hostile and sexually charged environment.

41. However, rather than immediately resigning, Plaintiff was encouraged by Human Resources to remain employed and was assured that her complaint would be addressed.

42. Relying upon those representations, Plaintiff remained employed with Defendant BRIGHT MINDS.

43. Thereafter, Plaintiff was contacted by Human Resources and instructed to participate in a meeting.

44. Given KING's sexually inappropriate conduct toward her and the significant discomfort and humiliation Plaintiff experienced as a result, Plaintiff reasonably expressed that she was uncomfortable being placed in the same room as KING.

45. Plaintiff requested that the meeting be conducted remotely via Zoom so that she would not be forced into an in-person interaction with the individual she had just reported for sexual harassment.

46. Defendant BRIGHT MINDS agreed that the meeting could be conducted virtually.

47. On or around February 11, 2025, Plaintiff followed up with Human Resources concerning the anticipated Zoom meeting.

48. Instead of providing Plaintiff with the investigation, protection, and corrective action she reasonably expected after reporting sexual harassment by the company's Chief Executive Officer, Plaintiff's employment was terminated.

49. Plaintiff's termination occurred approximately **one week after** she reported KING's sexually inappropriate conduct to Human Resources.

50. The extraordinarily close temporal proximity between Plaintiff's protected complaint and her termination supports Plaintiff's allegation that her termination was retaliatory.

51. Defendant BRIGHT MINDS subsequently asserted that Plaintiff's termination resulted from alleged attendance, sign-in, performance, and policy violations.

52. Plaintiff avers that the reasons asserted by Defendant BRIGHT MINDS for her termination were pretextual and were utilized to conceal the discriminatory and retaliatory reasons for the adverse employment action taken against her.

53. Notably, Defendant BRIGHT MINDS was aware of alleged performance and disciplinary issues prior to Plaintiff's February 4, 2025 complaint, yet Plaintiff remained employed.

54. It was only after Plaintiff complained that the company's Chief Executive Officer had directed an unwanted and sexually inappropriate comment toward her breasts that Defendant BRIGHT MINDS terminated her employment.

55. Plaintiff engaged in protected activity when she reported KING's sexually inappropriate and harassing conduct to Human Resources and opposed conduct that she reasonably believed constituted sex/gender discrimination and sexual harassment.

56. Plaintiff further engaged in protected activity by seeking responsive measures that would prevent her from being required to interact in person with KING after the incident.

57. Rather than ensuring that Plaintiff could continue her employment without fear of harassment or retaliation, Defendants terminated Plaintiff shortly after she complained about the conduct of the company's Chief Executive Officer.

58. Defendants' conduct caused Plaintiff to suffer substantial humiliation, embarrassment, emotional distress, loss of employment, lost wages, and damage to her professional reputation.

59. Plaintiff was forced to endure not only the humiliation of having the Chief Executive Officer of her employer direct a lewd and sexually charged comment toward her breasts, but also the additional distress of losing her employment shortly after she reported that conduct.

60. Defendants' actions and omissions created and perpetuated a working environment that Plaintiff reasonably perceived as hostile, intimidating, sexually charged, and offensive based upon her sex/gender.

61. Defendants knew or should have known of the sexually inappropriate conduct complained of by Plaintiff and failed to take sufficient measures to protect Plaintiff from the consequences of that conduct and from retaliation for reporting it.

62. Defendants acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

63. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer economic losses, emotional distress, humiliation, embarrassment, loss of enjoyment of life, and other compensable damages.

64. The foregoing is illustrative of Defendants' unlawful conduct and does not encompass the full extent of the discrimination, harassment, hostile treatment, and retaliation to which Plaintiff was subjected.

## COUNT I
## SEX/GENDER AND RELIGIOUS DISCRIMINATION UNDER TITLE VII
*(As against Defendant Bright Minds)*

65. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

66. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a) Employer practices - It shall be an unlawful employment practice for an

employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex."

67. Defendant discriminated against Plaintiff on the basis of her sex/gender by subjecting her to unlawful employment practices, including disparate treatment, sexually inappropriate and discriminatory conduct, and termination of her employment.

68. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

**COUNT II**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**
*(As against Defendant Bright Minds Consulting Inc..)*

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-2, states in relevant part that: "(a) Employer practices - It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex."

71. Defendant subjected Plaintiff to a hostile work environment in violation of Title VII by subjecting her to unwelcome, sexually charged, humiliating, and offensive conduct based upon her sex/gender, including sexual harassment by Defendant KING, Defendant BRIGHT MINDS' Chief Executive Officer.

72. The sexually harassing conduct directed toward Plaintiff was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, humiliating, and offensive working environment.

73. Defendant knew or should have known of the sexually harassing conduct and failed to take adequate remedial measures to protect Plaintiff from the hostile work environment and its effects.

74. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

**COUNT III**
**RETALIATION UNDER TITLE VII**
*(As against Defendant Bright Minds Consulting Inc.)*

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

76. Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e-3, states in relevant part that: "(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77. Plaintiff engaged in protected activity when she reported and opposed Defendant KING's sexually inappropriate and harassing conduct to Human Resources and requested responsive measures to avoid further interaction with KING.

78. Defendant violated Plaintiff's rights by retaliating against Plaintiff for engaging in protected activity, including by terminating Plaintiff's employment approximately one week after she reported the sexually harassing conduct.

79. Defendant's stated reasons for terminating Plaintiff's employment were pretextual and were utilized to conceal Defendant's unlawful retaliatory motive.

80. Plaintiff accordingly makes claims for all damages available to her against Defendant under Title VII.

**COUNT IV**
**DISCRIMINATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**
*(As against Defendant BRIGHT MINDS)*

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq., prohibits discrimination in employment on the basis of sex.

83. Defendants discriminated against Plaintiff on the basis of her sex/gender by subjecting her to unlawful employment practices, including disparate treatment, sexually inappropriate and discriminatory conduct, and termination of her employment.

84. Defendant KING directly participated in the discriminatory conduct complained of herein, including by directing sexually inappropriate, humiliating, and offensive conduct toward Plaintiff.

85. Plaintiff accordingly makes claims for all damages available to her under the PHRA.

**COUNT V**
**HOSTILE WORK ENVIRONMENT UNDER**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**
*(As against Defendant BRIGHT MINDS)*

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

87. Defendants subjected Plaintiff to a hostile work environment in violation of the PHRA by subjecting her to unwelcome, sexually charged, humiliating, and offensive conduct based upon her sex/gender.

88. Defendant KING personally participated in the sexually harassing conduct, including by directing an unsolicited, lewd, and sexually inappropriate comment toward Plaintiff concerning her breasts while Plaintiff was performing her employment duties.

89. The conduct complained of was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment and create an intimidating, hostile, humiliating, and offensive working environment.

90. Defendant BRIGHT MINDS knew or should have known of the sexually harassing conduct and failed to take adequate remedial measures to protect Plaintiff from the hostile work environment and its effects.

91. Plaintiff accordingly makes claims for all damages available to her under the PHRA.

**COUNT VI**
**RETALIATION UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**
*(As against all Defendants)*

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93. The PHRA prohibits retaliation against an employee for opposing practices prohibited by the PHRA.

94. Plaintiff engaged in protected activity when she reported and opposed Defendant KING's sexually inappropriate and harassing conduct to Human Resources and sought responsive measures designed to prevent further unwanted interaction with KING.

95. Defendants violated Plaintiff's rights by retaliating against her for engaging in protected activity, including by terminating Plaintiff's employment approximately one week after she complained of sexual harassment and sex/gender discrimination.

96. The reasons subsequently asserted for Plaintiff's termination were pretextual and were utilized to conceal unlawful discrimination and retaliation.

97. Plaintiff accordingly makes claims for all damages available to her under the PHRA.

**COUNT VII**
**DISCRIMINATION UNDER THE PFPO**
(*As against Defendant BRIGHT MINDS*)

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. The Philadelphia Fair Practices Ordinance, §9-1103 states in relevant part that: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon such individual's race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), reproductive health autonomy, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, domestic or sexual violence victim status, human trafficking victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

100. Defendants discriminated against Plaintiff by subjecting her to unlawful employment practices, including but not limited to disparate treatment and termination on her basis of her sex.

101. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**COUNT VIII**
**RETALIATION UNDER THE PFPO**

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. The Philadelphia Fair Practices Ordinance, §9-1103, states in relevant part: "It shall be an unlawful employment practice…(g) For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder.

104. Defendants violated the PFPO by retaliating against Plaintiff for reporting and opposing the harassment and discrimination to which she was subjected.

105. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**COUNT IX**
**AIDING AND ABETTING UNDER THE PFPO**
*(As against Defendant KING)*

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

107. The Philadelphia Fair Practices Ordinance, §9-1103, states in relevant part: "It shall be an unlawful employment practice…(h) For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

108. Defendant KING aided and abetted Defendant BRIGHT MINDS' unlawful employment practices perpetrated against Plaintiff.

109. Plaintiff accordingly makes claims for all damages available to her under the PFPO.

**JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

**FREUNDLICH & LITTMAN, LLC**
*Attorneys for Plaintiff*

By: */s/ Nathaniel N. Peckham, Esq.*
Nathaniel N. Peckham, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
E: *nathaniel@fandllaw.com*

Dated: October 7, 2026